UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Walter O. Singh, individually and
on behalf of his minor son, T.T.,
    Plaintiff,

v.

The City of Minneapolis, Officer Mark Madich
(Badge # 004321) and Officer Anthony Smith
(Badge #006629), acting in their individual capacities
as Minneapolis Police Officers,

    Defendants.

Civil No. 05-2969 (JRT/FLN)

**REPORT AND RECOMMENDATION**

---

*Pro Se* Plaintiff.
Greg Sautter, for Defendant.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on June 22, 2007, on Defendants City of Minneapolis, Officer Mark Madich and Officer Anthony Smith's (hereinafter "City Defendants") Motion for Summary Judgment [#23]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that City Defendants' Motion for Summary Judgment [#23] be granted.

### I.    FINDINGS OF FACT

Plaintiff Walter O. Singh brought this action against the City Defendants under the Civil Rights Acts contained in 42 U.S.C. §§ 1981, 1983, the Minnesota Human Rights Act, Minn. Stat. §§ 363A.01 *et seq.*, and various torts under state law. (*See* Compl.) Plaintiff's claims arise from the Minneapolis Police's response to an early morning disturbance at his home. (*See* Compl.)

Early in the morning on April 3, 2005, Plaintiff returned home after performing as Elvis at the Mall of America. (Sautter Aff., Ex. 1, Walter Singh Dep., 8-9.) Upon his arrival at his home, Plaintiff parked his car in his driveway, exited his vehicle and was confronted by his neighbors, who are also his nephews. (W. Singh Dep., 8-9.) The nephews began to chase Plaintiff and threatened to shoot him. (W. Singh Dep., 9.) Plaintiff ran into his home. (W. Singh Dep., 9.) Once inside his home, Plaintiff awoke his son, T.T., and told him about the threats made by his nephews. (W. Singh Dep., 10.) At this time, Plaintiff went back out into his yard to retrieve his dog and cat, which were still outside. (W. Singh Dep., 10.) When Plaintiff went back outside, he was physically assaulted by his nephews and one other boy. (W. Singh Dep., 10.) At some point, Plaintiff was able to get back to his home and call 911. (W. Singh Dep., 18.)

Plaintiff waited inside his home until Officer Mark Madich and Officer Anthony Smith ("Officer Defendants") arrived at approximately 4 a.m. (W. Singh Dep., 18-19.) Plaintiff walked out to the Officer Defendants' police car and told the police that his nephews assaulted him. (W. Singh Dep., 20.) Plaintiff indicated that he believed the boys were in the alleyway behind his home. (W. Singh Dep., 20.) Then, the Officer Defendants' drove back into the alleyway. (W. Singh Dep., 20.) Once in the alleyway, the Officer Defendants talked to the boys in the alley. (W. Singh Dep., 22.)

After talking to the boys, Officer Madich came from the backyard to the frontyard. (W. Singh Dep., 23.) Officer Madich handcuffed and searched Plaintiff. (W. Singh Dep., 23.) During the search, Officer Madich asked Plaintiff if he had any drugs or alcohol. (Sautter Aff. Regarding T.T., Ex. A, T.T. Dep.,48.) After searching Plaintiff, Officer Madich told Plaintiff to wait in the front yard. (W. Singh Dep., 23.) Officer Madich went back and talked to the boys. (W. Singh Dep.,

23.)  The boys told Officer Madich that Plaintiff had already sued the Minneapolis Police Department. (W. Singh Dep., 23.)  Then, Officer Madich came back into the front yard and released the handcuffs. (W. Singh Dep., 23.)  Officer Madich told Plaintiff to go back into his home. (W. Singh Dep., 24.)  Plaintiff did go back into his home and locked the door behind himself. (W. Singh Dep., 24.)

After being in the house for a short period of time, Plaintiff and his son left the house and walked toward Plaintiff's car. (W. Singh Dep., 24.)  Officer Madich ordered them back into their house. (W. Singh Dep., 24.)  Plaintiff said that needed to go to the hospital because he was bleeding and hurt. (W. Singh Dep., 24.)  As Plaintiff put his son in the front passenger seat, Officer Madich came over and grabbed Plaintiff and his son. (W. Singh Dep., 25.)  Officer Madich grabbed Plaintiff and his son by their necks and shoulders. (W. Singh Dep., 27-28.)  Then Officer Madich forcefully pushed Plaintiff toward Plaintiff's home. (W. Singh Dep., 29.)  Plaintiff's son was knocked to the ground by Officer Madich's push. (T.T. Dep.,48.)  With Officer Madich's help, Plaintiff's son got back up and entered the home with Plaintiff. (W. Singh Dep., 25.)

The next morning, Plaintiff and his son went to the hospital. (W. Singh Dep., 26.)  Plaintiff was treated for injuries sustained in the assault by his nephews. (W. Singh Dep., 30.)  Plaintiff attributes his sore back and neck to the pushes sustained from Officer Madich. (W. Singh Dep., 30-31.)  Plaintiff's son did not receive evaluation or treatment at the hospital on the next morning. (T.T. Dep., 50.)  Plaintiff's son experiences back pain that he attributes to the pushes sustained by Officer Madich. (T.T. Dep., 50-51.)  Plaintiff's son did have back pain prior to the night of April 3, 2005. (T.T. Dep., 72.)

## II.  STANDARD OF REVIEW

According to Federal Rule of Civil Procedure Rule 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to determine whether a certain fact is material, " it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). When the moving party brings forth a proper summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ.P. 56(e); see Anderson, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); see also Celotex Corp. v. Catrett, 477

U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c).")

### III.   LEGAL ANALYSIS

**A.   The Officer Defendants Are Entitled To Immunity Because Plaintiff Has Not Alleged That A Clearly Established Right Was Violated.**

Plaintiff's Federal Constitutional claims are brought under the Civil Rights Act and arise from Officer Madich physically preventing him from entering his automobile and pushing him back into his home.[1] Plaintiff's State law claims stem from the same incident and alleged both violations under the Minnesota Human Rights Act and the common law torts of assault, battery, false imprisonment and false arrest.  The Officer Defendants are entitled to qualified immunity on the Federal law claims and official immunity on the State law claims because Plaintiff's evidence taken in the light most favorable to the Plaintiff fails to establish that the Officers knowingly violated any of Plaintiff's clearly established Constitutional rights.

**1.   The Officer Defendants Are Entitled To Qualified Immunity On The Federal Constitutional Claims Under the Civil Rights Act.**

The Officer Defendants assert the affirmative defense of qualified immunity to Plaintiff's Federal Constitutional claims under the Civil Rights Act . "Qualified immunity shields government actors from suit when, 'a reasonable officer could have believed [the challenged act] to be lawful, in light of clearly established law and the information the [defendant]s possessed.'" *Weiler v. Purkett*, 137 F.3d 1047, 1049 (8th Cir. March 2, 1998) (en banc) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).  To determine whether an officer loses qualified immunity, a court must

---

[1] During the hearing on this matter, Plaintiff abandoned any claims based upon his being handcuffed and searched.

perform a two-prong analysis. *Weiler*, 137 F.3d at 1050. First, the court must determine if the plaintiff alleged a deprivation of constitutional magnitude. *Id*. Second, if the plaintiff has alleged such a deprivation, the court must determine if the right was so clearly established that a reasonable officer would have known his or her conduct violated the Constitution at the time of the act. *Id*. Plaintiff's Federal Constitutional claims arise from Officer Madich physically preventing Plaintiff from entering his automobile and pushing him back into his home.

The Court will assume without deciding that Officer Madich's physically preventing him Plaintiff from entering his automobile and pushing him back to his home is impermissible under the Fourth Amendment. The Court must turn to whether Plaintiff's right to be free from Officer Madich's conduct is clearly established.

In *Greiner v. City of Champlin*, the Eighth Circuit considered whether law enforcement responding to a house party could order guests to leave, even though they intended on spending the night. 27 F.3d 1346, 1352 (8th Cir. 1994). The Eighth Circuit concluded that it was not clearly established law that law enforcement could not order the guest to leave. *Id*. The Court went on to state the that the proper test is a balancing test weighing the governmental interest in dispersing the guests versus the guests right to remain at the home. *Id*. at 1353. However, in *Greiner*, the Court stated that "[it] emphatically do[es] not consider how [it] would resolve the relative interests of the city and the guest on the merits." *Id*.

Here, the facts are analogous to the facts in *Greiner*. The Officer Defendants were faced with a late night disturbance and sought to defuse the late night disturbance by ordering the Plaintiff back into his home. In light of the Eighth Circuit's refusal to address *Greiner* on the merits and provide guidance regarding the right to disregard law enforcement's order to disperse from an

incident, the Officer Defendants did not violate a right that was clearly established at the time of the incident.

Plaintiff also alleges that Officer Madich used excessive force in ordering him back into his home. "A violation of [the right to be free from excessive force] will support a [Civil Rights] action, but not every push or shove by an officer violates the Fourth Amendment." *Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) (*citing Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003)). The Defendant Officers force is not excessive if "objectively reasonable under the particular circumstances." *Greiner,* 27 F.3d at 1354. In order for these pushing incidents to arise to a constitutional violation, the Plaintiff must show more than a *de minimis* injury. *Andrews*, 417 F.3d at 818. Here, Officer Madich's actions were reasonable under the circumstances because physical contact was necessary due to Plaintiff's failure to respond to Officer Madich's verbal order. Finally, the injuries reported by Plaintiff are *de minimis* constitute a excessive force and a Constitutional violation.

Plaintiff brings a claim based upon racial discrimination under §1981 of the Civil Rights Act. 42 U.S.C. §1981. Plaintiff alleges that the Officer Defendants actions were motivated by racial discrimination. Plaintiff must show that "the officers' actions were racially motivated by purposeful discrimination." *Buffkins v. City of Omaha*, 922 F.2d 465, 468 (8th Cir. 1990). However, there is no evidence for a trier of fact to conclude that the actions of the Defendant Officers were racially motivated. Absent some evidence of racial motivation, Plaintiff's claim under §1981 must be dismissed.

Since the evidence taken in the light most favorable to the Plaintiff does not support a violation of a clearly established Constitutional right, the Defendant Officers are entitled to qualified

immunity on the Plaintiff's Federal law claims. The Court must turn to the doctrine of official immunity on the Plaintiff's State law claims.

**2.      The Officer Defendants Are Entitled to Official Immunity on the State Law Claims.**

"Under Minnesota law, a public official is entitled to official immunity from state law claims when that official is charged by law with duties that require the exercise of judgment or discretion." *Johnson v. Morris*, 453 N.W.2d 31, 41 (Minn. 1990) (*citing Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn. 1988)). The duties of police officers requires the exercise of judgment or discretion. *Johnson*, 453 N.W.2d at 41. The officers seek official immunity on the Plaintiff's state law claims, which arise from Officer Madich physically preventing Plaintiff from entering his automobile and pushing him back into his home.

The exception to official immunity exists if the officer commits a willful or malicious wrong. *Elwood*, 423 N.W.2d at 679. For purposes of official immunity, willful and malicious are synonymous and are defined as "the intentional doing of a wrongful act without legal justification or excuse." *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991). To establish malice, Plaintiff must do more than allege malice; Plaintiff must present specific facts showing the officers intentionally acted wrongfully without legal justification or excuse. *Reuter v. City of New Hope*, 449 N.W.2d 745, 751 (Minn. App. 1990). Officer Madich could not have intentionally acted wrongfully without legal justification because it has not been established the Officer Madich's actions were without legal justification. *See supra* III. A. 1.

Plaintiff's claim under the MHRA asserts that the acts of the Defendant Officers were in reprisal for Plaintiff filing suit against other Minneapolis Police Officers. Since the acts that

comprise the alleged reprisal were not intentional wrongs without legal justification, the MHRA claims must fail as being subject to official immunity.

Since the evidence taken in the light most favorable to the Plaintiff does not support the proposition that the Defendant Officers acted wrongfully without legal justification or excuse , the Defendant Officers are entitled to official immunity on the Plaintiff's State law claims.

**B.     Plaintiff Has Failed To Show Any Policy or Custom To Impose Liability For A § 1983 Claim Against The City.**

Plaintiff also brings claims against the City of Minneapolis based upon a violation of Constitutional rights by units of local government under 42 U.S.C. §1983.  *See* 42 U.S.C. §1983. Section 1983 claims against units of local government cannot be based upon the actions of its employees and agents, but rather must be shown through a formal policy or informal custom. *Monell v. Dept of Soc. Serv.*, 436 U.S. 658, 694 (1978).  Plaintiff has not identified or provided any evidence for the existence of a formal policy or informal custom that has caused a deprivation of his constitutional rights.  Plaintiff bases his claim against the City upon allegations with no evidentiary support.  In support of its position that the City of Minneapolis does not have a policy or custom authorizing unconstitutional or other unlawful conduct, the Defendant City submits the affidavit of Police Chief Timothy Dolan. (*See* Dolan Aff.)  Therefore, Plaintiff's claim also fails because he has not provided any evidence for the trier of fact to conclude  that a formal policy or informal custom of the City Defendant caused the deprivation of his constitutional rights.

## IV.   RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that City Defendant's Motion for Summary Judgment [#23] be **GRANTED**.


DATED: October 15, 2007                     s/ Franklin L. Noel
                                            FRANKLIN L. NOEL
                                            United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **November 1, 2007**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed **November 1, 2007** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.